UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

MATTHEW J. JONES,                )
                                 )
        Petitioner,              )
                                 )
v.                               )        Case Nos. 4:02-cr-52-02 / 4:07-cv-1
                                 )        Judge Edgar
UNITED STATES OF AMERICA         )
                                 )
        Respondent.              )


## MEMORANDUM


Federal prisoner Matthew J. Jones ("Jones") has made a *pro se* motion for post-conviction

relief pursuant to 28 U.S.C. § 2255. After reviewing the record, the Court concludes that the § 2255

motion is without merit. Because the record conclusively shows that Jones is not entitled to relief

under 28 U.S.C. § 2255, the motion will be denied and dismissed with prejudice. There is no need

for an evidentiary hearing.

## I.    Standard of Review

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside,

or correct his judgment of conviction and sentence on the ground that the sentence was imposed in

violation of the Constitution or laws of the United States, or that the federal district court lacked

jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by

federal law, or is otherwise subject to collateral attack.

To obtain post-conviction relief under 28 U.S.C. § 2255, a motion must allege: (1) an error

of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3)

1

an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

To warrant relief under § 2255 based on an alleged constitutional error, Jones bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). To warrant relief under § 2255 based on an alleged non-constitutional error, Jones bears the burden of establishing that there was a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process. *Hill v. United States*, 368 U.S. 424, 428 (1962); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

An evidentiary hearing is unnecessary if the there are no material issues of fact in dispute, or if the record conclusively shows that Jones is not entitled to relief under § 2255. An evidentiary hearing is not required if his allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485, (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Cordell v. United*

2

*States*, 2008 WL 4568076, * 2 (E.D. Tenn. Oct. 14, 2008).

Jones bears the burden of articulating sufficient facts to state a viable claim for relief under 28 U.S.C. § 2255. Mere vague conclusory assertions which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Ryals v. United States*, 2009 WL 595984, * 5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008).

A § 2255 motion is not a substitute for a direct appeal and cannot do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady,* 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Jones cannot use a § 2255 motion to relitigate the same issues that were fully, fairly presented and decided in his direct appeal to the Sixth Circuit Court of Appeals. Issues which are fully, fairly presented and considered on direct appeal may not be relitigated in a § 2255 proceeding absent exceptional circumstances or an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996).

## II.     Facts and Procedural History

The underlying facts are summarized in the presentence investigation report and the opinion rendered by the Sixth Circuit Court of Appeals on the first direct appeal by Jones. *United States v.*

*Jones*, 403 F.3d 817 (6th Cir. 2005).

On March 2, 2002, the Warren County Sheriff's Department received a 911 emergency telephone call from a concerned neighbor about methamphetamine being manufactured in a residential area. Deputy Sheriff Kevin Murphy was dispatched to investigate and he determined that the methamphetamine odor was coming from the residence of Stanley Bradley ("Bradley"). Deputy Murphy had personal knowledge of a prior methamphetamine incident at Bradley's residence. Upon his arrival, Deputy Murphy saw a truck owned by Jones parked in Bradley's yard. Deputy Murphy knew Jones to be a methamphetamine user.

When he approached the front of Bradley's residence, Deputy Murphy detected and smelled a chemical odor that he associated with the manufacture of methamphetamine – a methamphetamine laboratory – emanating from the house. Deputy Murphy recognized the distinctive smell and odor of methamphetamine based upon his experience as a law enforcement officer with approximately 100 methamphetamine laboratories. Deputy Murphy knocked on the front door and loudly announced that he was with the sheriff's department. Deputy Murphy observed window curtains move and overheard sounds coming from within the house indicating that someone was present inside the house but no one came to answer the front door.

Deputy Murphy asked Stuart Whitman, an off-duty police officer who lived nearby, to watch the back of Bradley's house to see if anyone attempted to exit surreptitiously. The two police officers monitored the front and back of Bradley's house for approximately ten minutes after which Officer Whitman observed Jones exit through a garage door at the rear of the house.

Deputy Murphy ran around to the back of the house where he recognized Jones. Deputy Murphy became concerned for his own safety when he saw Jones walking toward Jones's truck. It

4

was reasonable to believe that Jones might be going to his truck to either obtain a weapon or attempt to escape. Deputy Murphy considered Jones to be potentially armed and dangerous. Deputy Murphy ordered Jones to halt and put his hands up. When Jones showed his hands, Deputy Murphy observed that the hands of Jones were stained with iodine, an ingredient commonly used to manufacture methamphetamine. At this juncture, Deputy Murphy had sufficient facts and information to form a reasonable suspicion that Jones was involved in criminal activity, i.e. manufacturing methamphetamine inside Bradley's house. Based on that reasonable suspicion, Deputy Murphy had a right to conduct a *Terry* stop and detain Jones for investigative purposes. *Terry v. Ohio*, 392 U.S. 1 (1968).

Deputy Murphy handcuffed Jones and he frisked or did a pat down search on Jones for weapons but no weapons were found. Deputy Murphy, accompanied by Jones, returned to the front of Bradley's house. Jones gave his oral consent to a more thorough search of his person which revealed that Jones had several coffee filters in his pants pocket. Deputy Murphy knew that coffee filters are commonly used in the manufacture of methamphetamine.

His suspicions heightened that there was a methamphetamine lab inside Bradley's house, Deputy Murphy resumed knocking on the front door. Bradley came to the door and Deputy Murphy called for "backup" from other deputies. Bradley gave written consent to search his residence for a methamphetamine laboratory. The search yielded items associated with the manufacture of methamphetamine including 210 ephedrine tablets, approximately 182.5 grams of white powder (laboratory reports indicate ephedrine), portions of a methamphetamine recipe, stick matches, Red Devil lye, iodine crystals, cooking vessel, a gallon of acetone, an empty gallon acetone container, 16-ounce bottle of alcohol, a scanner, coffee filters, plastic tubing, and assorted containers of acidic

liquids.

Jones made a written statement at the scene stating that he had iodine stains on his hands before he arrived at Bradley's residence that day. Jones denied manufacturing methamphetamine in Bradley's house. Jones said that he only went to Bradley's residence that day to work on his truck. Jones admitted to police officers that he used methamphetamine and he helped make iodine crystals for other individuals.

On May 14, 2003, the federal grand jury returned a superseding indictment against Jones and co-defendant Bradley. Count One of the indictment charged that Jones and Bradley violated 21 U.S.C. § 846 by conspiring to manufacture methamphetamine, a Schedule II controlled substance. Count Three charged that Jones and Bradley possessed equipment, chemicals, products and materials used to manufacture methamphetamine, knowing, intending or having reasonable cause to believe that such equipment, chemicals, products, and materials would be used to manufacture methamphetamine, in violation of 21 U.S.C. § 843(a)(6).

Jones pleaded not guilty and the case went to trial in May 2003. The jury at trial found Jones guilty on Counts One and Three. This Court sentenced Jones to a total term of imprisonment of 262 months. This term consists of 262 months on Count One and 240 months on Count Three to be served concurrently. Jones took a direct appeal to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed the convictions but vacated the sentence and remanded to the District Court for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005).

On September 26, 2005, this Court held a *Booker* resentencing hearing and imposed the same sentence of imprisonment on Jones. The amended judgment of conviction was entered on October 5, 2005. [Doc. No. 140]. Jones took a direct appeal from the amended judgment to the Sixth Circuit

Court of Appeals. On January 29, 2007, the Sixth Circuit affirmed the amended judgment of conviction and sentence, and dismissed the appeal. The Sixth Circuit determined that the sentence of imprisonment is reasonable.

## III. Claims in § 2255 Motion

In his § 2255 motion, Jones makes four claims that his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution was violated. The Court finds that Jones has not met this burden of showing that he is entitled to relief under 28 U.S.C. § 2255 on any of his claims. His Sixth Amendment right to effective assistance of counsel was not violated. Jones has not established an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings.

### A. *Strickland* Test

The Sixth Amendment provides that in all criminal prosecutions the accused shall have the right to assistance of counsel for his defense. Ineffective assistance of counsel in violation of the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000); *Austin v. Bell*, 126 F.3d 843, 847 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996).

The Supreme Court in *Strickland* established a two-part test for deciding Sixth Amendment claims of ineffective assistance of counsel. First, Jones must establish that his attorney's performance was deficient. Second, Jones is required to demonstrate that his counsel's deficient performance prejudiced his defense by depriving Jones of a fair criminal proceeding. *Strickland*,

466 U.S. at 687; *Short*, 471 F.3d at 691; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d 736; *Smith v. Mitchell,* 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs*, 235 F.3d at 267.

The first part of the *Strickland* test requires Jones to show that his attorney's representation was deficient in that it fell below an objective standard of reasonableness. Jones must show that his attorney made such serious errors that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687-88; *Short*, 471 F.3d at 691; *Sowell*, 372 F.3d at 836; *Wickline,* 319 F.3d at 819; *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995).

The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Short*, 471 F.3d at 691; *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84; *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994). Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Jones to show also that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory. *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Jones must show there is a reasonable probability that, but for the errors and deficient performance of his attorney, the result of the criminal proceeding would have been different and more favorable to Jones. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. *Strickland*, 466 U.S. at 693-94; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter*, 218 F.3d at 591; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

**B.**     **First Claim: Direct Appeal From Amended Judgment of Conviction and Sentence of Imprisonment Reasonable**

For his first ineffective assistance of counsel claim, Jones contends that his counsel failed to file a direct appeal from the amended judgment of conviction entered by this Court following the *Booker* resentencing on September 26, 2005. Jones further argues that the sentence of

imprisonment imposed at the *Booker* resentencing is unreasonable. He contends that this District Court did not adequately explain and articulate its reasons for imposing the sentence. Jones asserts that this Court did not give sufficient consideration to the relevant factors provided in 18 U.S.C. § 3553(a). For relief, Jones demands that he either be resentenced or allowed to file an untimely direct appeal.

This claim fails. The record conclusively shows that counsel for Jones timely filed a direct appeal from the amended judgment of conviction. On September 26, 2005, this Court held the *Booker* resentencing hearing and the amended judgment of conviction was entered on October 5, 2005. [Doc. No. 140]. Counsel for Jones filed a notice of appeal to the Sixth Circuit Court of Appeals. On January 29, 2007, the Sixth Circuit affirmed the amended judgment and dismissed the appeal. The Sixth Circuit decided that the sentence of imprisonment is reasonable. The Sixth Circuit determined that the District Court properly considered the factors in 18 U.S.C. § 3553(a) when imposing the sentence.

In its order entered on January 29, 2007, the Sixth Circuit stated that counsel for Jones had moved to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Counsel for Jones was of the opinion that there were no meritorious grounds for appeal, but nonetheless counsel questioned whether the sentence imposed at the *Booker* resentencing was reasonable. The Sixth Circuit notified Jones of his right to respond to his counsel's *Anders* brief, but Jones did not respond. Jones made a motion for appointment of counsel which was denied by the Sixth Circuit.

The transcript of the *Booker* resentencing hearing held on September 26, 2005, shows that this District Court adequately explained and articulated its reasons for imposing the sentence. This Court gave sufficient consideration to the relevant factors in 18 U.S.C. § 3553(a). Accordingly, the

Court rejects the demand by Jones that he be resentenced or allowed to file an untimely direct appeal.

Moreover, the reasonableness of the sentence of imprisonment was decided by the Sixth Circuit on January 29, 2007. Jones cannot use the instant § 2255 motion to relitigate the same issue that was decided in his direct appeal to the Sixth Circuit Court of Appeals. *Wright*, 182 F.3d at 467; *Jones*, 178 F.3d at 796; *Oliver*, 90 F.3d at 180; *DuPont,* 76 F.3d at 110-11.

### C.    Second Claim: Deprived of Right to Testify at Trial

Jones next claims that he was deprived of his right to testify at trial due to ineffective assistance of counsel. Jones contends that he could have explained his presence at Bradley's residence to repair his truck. Jones further contends that he could have also rebutted the testimony of the government's witness, Cecil Swoveland, who testified at trial that Jones taught Swoveland how manufacture or "cook" methamphetamine. It is claimed that defense counsel said Jones could not testify at trial. Jones argues that if he had testified there would have been a different, more favorable result at the trial. It is alleged that counsel advised Jones that he could not to take the witness stand and testify at trial despite repeated requests by Jones to do so. Jones asserts there is no "affirmative record" showing that he knowingly waived his right to testify.

Jones does not offer any proof, such as the sworn affidavits of family members or other witnesses, to support his bare, self-serving allegation in his § 2255 motion that he wanted to testify at trial but he was denied the opportunity to testify. For the reasons expressed by government in its response [Doc. No. 150, pp. 5-10], this second claim fails and must be dismissed. Jones has not met his burden of showing either prong of the *Strickland* test as to this second claim. Jones cannot establish that his counsel's performance was deficient and fell below an objective standard of

reasonableness. Jones also cannot demonstrate that his counsel's performance caused Jones to suffer actual prejudice. There is no prejudice because Jones fails to show there is a reasonable probability that, but for his counsel's advice, Jones would have testified and been acquitted by the jury.

A criminal defendant's right to testify at trial is a fundamental right under the Fifth and Sixth Amendments to the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44, 51-53 and n. 10 (1987); *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007); *United States v. Webber*, 208 F.3d 545,550 (6th Cir. 2000). The right to testify at trial is personal to the defendant and may only be relinquished or waived by the defendant. A defendant's relinquishment or waiver of his right to testify must be knowing and intentional. *Stover*, 474 F.3d at 908; *Webber*, 208 F.3d at 550-51. The role of defense counsel is to advise the defendant whether he should testify, but it is ultimately a matter for the defendant to decide. *Id.* at 551.

When a tactical decision is made for a defendant not to testify at trial, the defendant's assent to and agreement with this strategy and tactical decision is presumed from the defendant's conduct. In the absence of any statements or actions by the defendant indicating disagreement with defense counsel or indicating the desire to testify, the trial court is not required to make an inquiry whether the defendant has knowingly and intentionally waived the right to testify. *Stover*, 474 F.3d at 908; *United States v. Campbell*, 86 Fed. Appx. 149, 153-54 (6th Cir. 2004); *Webber*, 208 F.3d at 551.

If Jones wanted to testify at trial, he could have rejected his counsel's advice, communicated with the trial court, or discharged his counsel. At a minimum, Jones was required to alert the trial court that he desired to testify which he completely failed to do in this case. *Stover*, 474 F.3d at 908-09; *Campbell*, 86 Fed. Appx. at 154; *Webber*, 208 F.3d at 551. At no time did Jones make any statement to this Court or take any action during the trial indicating either that he disagreed with his

counsel's advice or that he desired to exercise his right to testify. Based on his conduct during the trial, there is a strong presumption that Jones knowingly and intentionally relinquished and waived his constitutional right to testify. *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009); *Stover*, 474 F.3d at 908-09; *Webber*, 208 F.3d at 551; *Ajan v. United States,* 2009 WL 1421183, ** 14-15 (E.D. Tenn. May 20, 2009); *see also Gonzales v. Elo*, 233 F.3d 348, 356-57 (6th Cir. 2000).

To establish the first prong of the *Strickland* test, Jones must identify some factual material in the record of his trial which indicates or suggests that he wanted to testify but was prevented from doing so by his counsel. Jones has not identified anything in the trial record to support this claim. Because Jones never alerted the Court that he wanted to testify at trial, there is a strong presumption that defense counsel adhered to the requirements of professional conduct and left the final decision whether to testify with Jones as a tactical decision. The bare, self-serving, after-the-fact allegations by Jones in his § 2255 motion are insufficient to rebut and overcome this strong presumption of a waiver. *Hodge*, 579 F.3d at 639; *Brannon v. United States*, 2010 WL 1492225, * 7 (E.D. Tenn. April 14, 2010). Therefore, Jones cannot show ineffective assistance of counsel.

Furthermore, the Court agrees with the government's response that it was reasonable under the circumstances for defense counsel to advise Jones not to testify at trial. Jones had a prior felony conviction in the State of Tennessee in 2001 for the sale of methamphetamine. If Jones had testified at trial, he could have been impeached with the prior felony conviction. It was in the best interests of Jones not to disclose to the jury his prior conviction for selling methamphetamine.

Jones contends that he wanted to testify so he could explain to the jury: (1) that on the day Jones was arrested, he was at Bradley's house only to work on his truck and Jones was not there manufacturing methamphetamine; and (2) that Jones had iodine stains on his hands before he arrived

at Bradley's house. As a practical matter, Jones was able to get his basic story before the jury at trial without taking the witness stand, and without subjecting himself to cross-examination and impeachment with the prior felony conviction. Deputy Murphy testified at trial about the statement Jones made following his arrest. Deputy Murphy testified that Jones stated the following: (1) Jones admitted personally using methamphetamine but denied making methamphetamine at Bradley's house on the day of his arrest; (2) Jones said he was present at Bradley's house to work on his truck; and (3) Jones had iodine stains on his hands prior to arriving at Bradley's house because Jones made iodine crystals for other persons. Thus, Jones was able to get his version of events and his theory of the case before the jury through the testimony of Deputy Murphy without the necessity of Jones testifying. Putting Jones on the witness stand to testify would have served little or no useful purpose and would in all likelihood have been detrimental to his chances for obtaining an acquittal.

With respect to the contention that Jones could have rebutted the testimony of government witness Cecil Swoveland, if Jones had testified in an effort to rebut Swoveland, Jones would have run the risk of waiving or undercutting his Fed. R. Evid. 404(b) objection to Swoveland's testimony. It was reasonable for defense counsel to advise Jones that the better strategy would be for Jones not to testify and to challenge the veracity of Swoveland's testimony on cross-examination. This tactical decision helped to preserve the Fed. R. Evid. 404(b) objection to Swoveland's testimony for appeal. On direct appeal to the Sixth Circuit, counsel for Jones raised the Fed. R. Evid. 404(b) objection to Swoveland's testimony. *Jones*, 403 F.3d at 820-21.

### D. Third Claim: Motion to Suppress Evidence and *Terry* Investigative Stop

Jones claims that his counsel was ineffective for not making a pretrial motion to "quash the arrest and suppress the remainder of the evidence that accrued after the arrest." Jones contends that

there was no reasonable suspicion and no probable cause to detain and arrest him outside Bradley's house. Jones says that the *Terry* investigative stop, and the subsequent arrest and search of his person, violated his right against unreasonable search and seizure protected under the Fourth Amendment to the United States Constitution. For relief, Jones demands that his conviction be reversed and this case be "remanded" for a hearing under *Terry*, 392 U.S. 1.

The Court finds that Jones has not met his burden of showing either prong of the *Strickland* test as to this third claim. Jones cannot establish that his counsel's performance was deficient and fell below an objective standard of reasonableness. Jones also cannot demonstrate that his counsel's performance prejudiced his defense by depriving Jones of a fair criminal proceeding. Jones fails to show that his counsel's performance rendered the result of the criminal proceeding unreliable or fundamentally unfair. The performance of counsel was not so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory.

In *Terry*, 392 U.S. 1, the Supreme Court held that in the interest of safety, a police officer may stop and briefly detain a person for investigation even in the absence of probable cause to make an arrest. Although *Terry* focused on the safety of police officers and preventing future crimes, the Supreme Court has expanded the scope of permissible *Terry* investigative stops to situations where a police officer has a reasonable, articulable suspicion that a person has been, or is about to be, engaged in criminal activity. *United States v. Hensley*, 469 U.S. 221, 227 (1985); *United States v. Smith*, 594 F.3d 530, 536 (6th Cir. 2010); *United States v. Atchley*, 474 F.3d 840, 847-48 (6th Cir. 2007). This broad rule balances an individual's Fourth Amendment interest in personal security with the government's legitimate interest in preventing ongoing or future criminal activity, solving crimes, and bringing criminals to justice. *Hensley*, 469 U.S. at 228-29; *Atchley*, 474 F.3d at 848.

Based on the totality of the facts and circumstances, this Court finds that Deputy Murphy made a valid *Terry* investigative stop of Jones behind Bradley's house based on a reasonable suspicion that Jones was involved in criminal activity by manufacturing methamphetamine inside Bradley's house. Because Deputy Murphy had a reasonable suspicion that Jones was engaged in criminal activity, Deputy Murphy was permitted under the Fourth Amendment to detain and question Jones as part of a valid *Terry* investigative stop. *Atchley*, 474 F.3d at 849. Deputy Murphy was also justified in handcuffing Jones as a safety precaution during the *Terry* stop. Handcuffing is an appropriate safety measure when the police detain a suspect during a *Terry* stop. *Atchley*, 474 F.3d at 849; *Houston v. Does*, 174 F.3d 809, 814 (6th Cir. 1999).

To proceed from a *Terry* stop to a frisk or pat down search of an individual, the police must have reasonable suspicion that the person subjected to the frisk for weapons is armed and dangerous. *Arizona v. Johnson*, 129 S.Ct. 781, 784 (2009); *United States v. McDaniel*, 2010 W.L. 1253811, * 3 (6th Cir. April 2, 2010). The police officer need not be absolutely certain that the individual to be frisked is armed with a weapon. The issue is whether a reasonably prudent man in the same circumstances would be warranted in believing that his safety or the safety of others was in danger. *Johnson*, 129 S.Ct. at 784; *Terry*, 392 U.S. at 27; *McDaniel*, 2010 W.L. 1253811, at * 4; *United States v. Ridge*, 329 F.3d 535, 540 (6th Cir. 2003).

Based on the totality of the facts and circumstances in this case, this Court finds that Deputy Murphy was warranted in believing that his safety and the safety of Officer Whitman were in danger when the *Terry* stop of Jones occurred. Deputy Murphy had a reasonable suspicion that Jones was armed and dangerous. It was permissible for Deputy Murphy to conduct the frisk and pat down

search of Jones at the time of the *Terry* stop. Jones subsequently gave his voluntary consent for Deputy Murphy to conduct a more thorough search of Jones's person which resulted in Deputy Murphy finding the suspicious coffee filters in the pants pocket of Jones. Because Jones voluntarily consented to the search of his pants pocket which revealed the coffee filters, there was no Fourth Amendment violation. Regardless of whether Jones knowingly and voluntarily consented to the search of his pants pocket, Deputy Murphy had probable cause to arrest Jones and to search Jones incident to that valid arrest.

Furthermore, Jones clearly lacks standing to challenge and object to the search of Bradley's residence. Fourth Amendment rights are personal to each individual. Jones can only assert his own individual Fourth Amendment rights, and he cannot assert the Fourth Amendment rights of Bradley concerning the police search of Bradley's residence. Bradley gave his consent to the police to search inside Bradley's residence for a methamphetamine laboratory. Any motion by Jones to suppress the evidence seized from inside Bradley's residence would have been denied as frivolous.

A person who claims that his Fourth Amendment rights have been violated by an unreasonable search must establish that he has a reasonable expectation of privacy in the premises searched which involves subjective and objective components. Jones must establish that he had a subjective expectation of privacy in Bradley's residence and that society would recognize his expectation of privacy as being objectively reasonable. *Minnesota v. Carter*, 525 U.S. 83 88-91 (1998); *United States v. Whitehead*, 415 F.3d 583, (6th Cir. 2005); *United States v. Harris*, 255 F.3d 288, 294-95 (6th Cir. 2001); *United States v. Pollard*, 215 F.3d 643, 646-47 (6th Cir. 2000).

In determining whether Jones had a legitimate, reasonable expectation of privacy in Bradley's residence, we examine the ties that Jones had to the premises. *Harris*, 255 F.3d at 294-95.

Jones cannot meet his burden of showing that the had reasonable expectation of privacy in Bradley's residence. Jones cannot show that he had a subjective expectation of privacy in Bradley's residence, nor can he show that society would recognize his expectation of privacy in the premises searched as objectively reasonable. Jones did not live or reside at Bradley's house, and Jones was not an overnight guest of Bradley. Because Jones was merely a temporary visitor at Bradley's residence, Jones lacks a reasonable expectation of privacy in the premises searched by the police. *Id*. at 295. This is especially true where Jones was at Bradley's residence for the purpose of criminal activity – manufacturing methamphetamine – which does not give rise to a reasonable expectation of privacy for Jones. *Id*.

Accordingly, this third claim of ineffective assistance of counsel will be dismissed. Jones cannot show that his counsel's performance was deficient and fell below an objective standard of reasonableness. If defense counsel had made a motion to suppress evidence and raised the arguments proposed here by Jones, the motion would have been denied. The United States Constitution does not require defense counsel to raise frivolous defenses or arguments to avoid a charge of ineffective assistance of counsel. *Richards v. Million*, 76 Fed. Appx. 597, 600 (6th Cir. 2003); *Chapman v. United States*, 74 Fed. Appx. 590, 593 (6th Cir. 2003); *Krist v. Foltz*, 804 F.2d 944, 446-47 (6th Cir. 1986). Jones cannot satisfy the prejudice prong of the *Strickland* test because he cannot show there is a reasonable probability that, but for alleged failure of his counsel to file a motion to suppress evidence, Jones would have been acquitted.

### E.  Fourth Claim: Search of Jones Under Fourth Amendment and *Miranda* Warnings

For his fourth claim, Jones states that he was searched in violation of the Fourth Amendment

and *Miranda v. Arizona*, 384 U.S. 436 (1966).  He contends that the incriminating evidence was obtained by the police after he was illegally detained and arrested.  Jones alleges that he did not give his knowing and voluntary consent to be searched.  Jones further states:

> The agent did never (sic) actually ask me for consent to search me.  He lied.  Had I taken the witness stand this would have come out.  The agent failed to also give me any Miranda warnings.  Had he either given me Miranda warnings or actually asked me for my consent to search my person, I unequivocally would have refused.  This was illegal and all the evidence obtained that was on my person was obtained in violation of the constitution.

Jones argues that his counsel was ineffective for not making a motion to suppress the evidence seized from his person, namely the coffee filters found in his pants pocket.  Jones claims that if his counsel had made a motion to suppress the evidence, the Court would have granted it and Jones would not have been convicted.  Jones contends that he has suffered prejudice on the theory that he stands convicted as a result of his counsel's failure to make a motion to suppress evidence.

The Court finds that Jones has not met his burden of showing either prong of the *Strickland* test as to this fourth claim.  Jones cannot establish that his counsel's performance was deficient and fell below an objective standard of reasonableness.  Jones also cannot demonstrate that his counsel's performance prejudiced his defense by depriving Jones of a fair criminal proceeding.  Jones fails to show that his counsel's performance rendered the result of the criminal proceeding unreliable or fundamentally unfair.  The performance of counsel was not so manifestly deficient and ineffective that defeat was snatched from the hands of probable victory.  There is no prejudice here because Jones fails to show there is a reasonable probability that, but for his counsel's failure to make a motion to suppress the evidence, the result of the trial would have been different and Jones would have been acquitted.

Any such motion by Jones or his counsel to suppress evidence would have been denied by the Court as frivolous. Jones cannot show that there has been any violation of his rights under the Fourth Amendment. After the valid *Terry* investigative stop, Deputy Murphy had probable cause to arrest Jones and good cause to search Jones incident to that valid arrest. Because Deputy Murphy had probable cause to arrest and good cause to search Jones incident to that valid arrest, it was unnecessary for Deputy Murphy to obtain consent from Jones to search the person of Jones.

For purposes of Fourth Amendment search and seizure analysis, it is immaterial whether Deputy Murphy or other police officers gave *Miranda* warnings to Jones when Jones was detained or arrested and searched. The alleged lack of *Miranda* warnings does not make the search of Jones a violation of the Fourth Amendment. The physical search of Jones has nothing to do with *Miranda* which only governs the admissibility of oral and written statements made by a suspect during custodial interrogation. The physical search and seizure of the coffee filters from the pants of Jones are not the same as oral or written statements by Jones. Deputy Murphy was not required to give *Miranda* warnings to Jones prior to searching Jones incident to the arrest. The coffee filters that were found and seized by Deputy Murphy when he searched Jones are admissible evidence under the Fourth Amendment, and it is simply irrelevant whether Deputy Murphy did or did not give *Miranda* warnings to Jones incident to the search.

Even if we assume for the sake of discussion that the coffee filters found on Jones had been suppressed as evidence and had not been admitted at trial, the Court is not persuaded that this would have made any difference in the outcome of the trial. If the coffee filters had been suppressed as evidence, there is not a reasonable probability that it would have resulted in Jones being acquitted at trial. There was other ample incriminating evidence presented against Jones at trial to prove

beyond a reasonable doubt that he was guilty as a charged in the indictment.

**V.      Conclusion**

Accordingly, the motion by federal prisoner Matthew J. Jones for post-conviction relief pursuant to 28 U.S.C. § 2255 will be **DENIED and DISMISSED WITH PREJUDICE**.  The Court will certify that any appeal from this judgment would not be taken in good faith and would be frivolous.  Any application by Matthew J. Jones for leave to proceed *in forma pauperis* on appeal shall be **DENIED** pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. Civ. P. 24.

If Matthew J. Jones files a notice of appeal, it will be treated as an application for a certificate of appealability, which shall be **DENIED** because he has failed to make a substantial showing of the denial of a federal constitutional right.  28 U.S.C. § 2253(c)(2); Fed. R. Civ. P. 24.

A separate judgment will enter.

ENTER this the 11th day of May, 2010.


_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE